931 So.2d 1104 (2006)
Judith Brown MYERS
v.
William A. MYERS, III.
No. 2004-CA-2120.
Court of Appeal of Louisiana, Fourth Circuit.
April 26, 2006.
*1105 Roger J. Larue, Jr., Metairie, Counsel for Plaintiff/Appellant.
William A. Myers III, New Orleans, In Proper Person, Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY III, and Judge ROLAND L. BELSOME).
JOAN BERNARD ARMSTRONG, Chief Judge.
In this ongoing divorce litigation, Judith Brown Myers appeals the trial court's reduction of William A. Myers, III's monthly obligation for the support of their minor son, pursuant to a Special Master's Report.[1]
Mr. Myers is the sole proprietor of Trial Exhibits, Inc. and its subsidiary, Electronic Presentations, primarily serving trial attorneys in the preparation of trial exhibits. In connection with these enterprises, he operates a home office in Lake Vista. Mrs. Myers is employed as a gate agent for Delta Airlines in Kenner.
Mrs. Myers filed a petition for divorce in May, 2000, and was granted a judgment of divorce in December of that year. An interim judgment of December 21, 2000 provided, inter alia, that Mr. Meyers should pay $3500 per month for child and spousal support beginning on January 15, 2001, and $1500 prior to December 31, 2000. On March 19, 2001, Mr. Myers moved to terminate Mrs. Myers' interim spousal support, which motion was granted effective June 21, 2001 by judgment rendered March 29, 2001. On April 18, 2001, Mrs. Myers filed a rule to set alimony *1106 and child support retroactive to May 8, 2000. On June 20, 2001, the trial court entered judgment ordering Mr. Myers to pay monthly child support of $1500 and monthly spousal support in the amount of $3500 terminating on June 21, 2001 and subject to a credit of $18,400 toward the retroactive support obligation owed from May 8, 2000 through December 21, 2000. This judgment, requiring monthly support payments of $1500, deviated from the statutory support guidelines, from which we infer that the trial court found the combined monthly incomes of Mr. and Mrs. Myers exceeded $10,000. La.R.S. 9:315.13 B. Given Mrs. Myers' monthly salary of approximately $1600, it is clear that the trial court found Mr. Myers' income to have been more than $8,400, for an annual income of at least $100,000.
On December 13, 2001, Mr. Myers filed a motion to reduce his monthly obligation, citing a change of circumstances to his financial detriment allegedly caused by the actions of Mrs. Myers and her various attorneys, and to gain custody of the couple's minor son.
On January 16, 2003, the trial court appointed Frank Tranchina as Special Master to determine the parties' gross incomes and all other financial issues associated with Mr. and Mrs. Myers' motions concerning his support obligation.[2]
According to the Special Master's report of March 20, 2003, Mr. Tranchina obtained the services of Melo B. Nix, a forensic accountant, to review the parties' documentation and to determine their respective gross incomes.[3] Ms. Nix calculated Mr. Myers' gross income to be $82,541 and Mrs. Myers' income to be $19,097.95. The Special Master concluded that the $15,859 decrease in Mr. Myers' income was material, warranting a reduction in his child support obligation.
The special master calculated Mr. Myers' monthly child support obligation to be $794 plus 81% of any extraordinary medical expenses pursuant to the support guidelines, to be adjusted based upon each party's respective percentages for any health insurance premiums paid. The master based this calculation on Mrs. Myers' gross monthly income of $1,591.50 and Mr. Myers' gross monthly income of $6,878.42. This results in an 81% portion for Mr. Myers and a 19% portion for Mrs. Myers, applicable to the basic statutory support obligation of $980 for one child. See La.R.S. 9:315.19.
Attached to the Special Master's report is Melo Nix's letter of March 14, 2003, in which she notes:
I have reviewed the additional documentation delivered to me by Mr. Myers and that review has not changed the conclusion reached by me at our meeting.
She calculated Mr. Myers' 2002 income from total deposits, excluding transfers, of $126,348, less half of his automobile and travel expenses, 25% of his home office rent and utility expense, and all expenses for office supplies, subcontractor, computer and photographic expenses, telephone and bank charges, for total expenses of $43,897. This resulted in income of $82,541. Ms. Nix reviewed Mr. Myers' 2001 tax return showing his reported income from Trial Exhibits, Inc. of $97,204. Mrs. Myers' W-2 form for 2002 showed gross wages from Delta Air Lines in the amount of $19,097.95.
*1107 On June 13, 2003, Mrs. Myers filed an objection to the Special Master's report, waiving service of the report. Mrs. Myers made the following objections relevant to this appeal:
1. The Special Master and the CPA, Ms. Nix, requested additional information from Mr. Myers, made an ex parte request that Mr. Myers explain the data he provided, met ex parte with each other and with Mr. Myers and filed the final report after the date set by the trial court.
2. There was no showing of a change of circumstances between the time of the previous support award and the time of the filing of Mr. Myers' motion for modification. Furthermore, the Special Master allegedly ignored the trial court's finding in the reasons accompanying the June 20, 2001 judgment that the testimony established that the parties' combined adjusted gross income exceeds the Louisiana Child Support Guidelines of $10,000 per month.
3. Neither the Special Master nor Ms. Nix inquired as to whether Mr. Myers was concealing, diverting, under-reporting or otherwise falsifying his income as he had allegedly done in a prior divorce case.
In Mrs. Myers' Objection, she claims $22,800 for child support and $80,500 for spousal support.[4]
Mr. Myers responded noting that the only issue before the trial court was the amount of his 2002 income, and the appropriate amount of his child support obligation based upon that income.
On June 29, 2003, the trial court granted Mr. Myers' motion to quash discovery subpoenas issued to various law firms alleged to be his clients and to his bank regarding his income and business dealings. We denied Mrs. Myers' application for supervisory review of that order:
Relator's [Mrs. Myers'] argument that Judge Landrieu's order of January 16, 2003 provided that discovery could begin once the Special Master's report issued is without merit. It ignores Judge Ledet's order of May 26, 2000 and October 29, 2000. The record shows respondent [Mr. Myers] was clearly entitled to the order granting the discovery requests; there was no need for a hearing. La. C.C.P. art. 963.
Myers v. Myers, 2003-C-1317 (La.App. 4 Cir. 9/9/03). The Louisiana Supreme Court unanimously denied writs in Myers v. Myers, 2003-2785 (La.11/31/03), 857 So.2d 489.
On September 9, 2003, Mrs. Myers filed a Motion to Strike the report and findings of the Special Master. The trial court heard the motion on January 8, 2004.
On August 30, 2004, the trial court entered judgment finding that the Special Master's report was supported by the evidence. The court found that Mr. Myers' monthly income on January 2, 2002, the date on which he filed his Rule to Modify Child Support, was $6,878.42, and Mrs. Myers' monthly income on that date was $1591.50. Pursuant to La.R.S. 9:315.19, the basic child support obligation for one child whose parents have this income is $980. Mr. Myers was adjudged responsible for 81% of that obligation, and he was ordered to pay Mrs. Myers $794 per month retroactive to January 2, 2002, plus 81% of any extraordinary expenses, including tuition or child care costs. The trial court did not take testimony or address *1108 the issue of past due support. The trial court found that further discovery via third parties would not be in the child's best interest, and ordered that any additional discovery requests from third parties must be submitted for prior court review.
On October 13, 2004, the trial court granted Mrs. Myers' motion for a devolutive appeal of the judgment issued on August 30, 2004. On appeal, Mrs. Myers alleges manifest error and abuse of discretion and seeks reversal of that judgment and reinstatement of the trial court's judgment of June 20, 2001, awarding $1500 monthly child support, together with costs. For the reasons that follow, we affirm the judgment of the trial court.
Mrs. Myers complains that the Special Master's failure to seek discovery vitiates his report and that the trial court's action in appointing the Special Master rather than ruling on Mrs. Myers' outstanding motion to compel discovery has prejudiced her. In light of our ruling on Mrs. Myers' application for supervisory review of the trial court's order quashing her subpoenas, this argument is without merit.
Mrs. Myers contends that insufficient credible evidence was submitted to justify a reduction in child support based on a material change in Mr. Myers' financial circumstances, arguing that the Special Master and court-appointed forensic CPA did not research the financial issues adequately or independently.
Mrs. Myers argues that the Special Master's and forensic CPA's methodology does not meet the standard for acceptance of expert testimony set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and State v. Foret, 93-0246 (La.11/30/93), 628 So.2d 1116. Mrs. Myers claims that the experts did not perform independent research, but merely accepted the documentation furnished by the parties as to their respective incomes during the time period in question.
The Louisiana Code of Evidence provides that if technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. La.C.E. art. 702; see also F.R.E. 702. This provision constitutes an exception to the general rule that a witness's testimony in the form of opinions or inferences is limited to those opinions or inferences that are both rationally based on the witness's perception and helpful to a clear understanding of his testimony or the determination of a fact in issue. La.C.E. art. 701; see also, F.R.E. 701.
Broad discretion should be accorded the trial judge in his or her determination as to whether expert testimony should be held admissible and who should or should not be permitted to testify as an expert. La.C.E. art. 702, Official Comment (d); see also, 3 J. Weinstein & M. Berger, Weinstein's Evidence par. 702[02] (1981); 1 id. par. 104[03] (1982).
The standard set forth in Daubert and Foret requires the trial court to act as a gatekeeper to insure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. It requires that the expert's opinion has a reliable basis in the knowledge and experience of his discipline. We are mindful of the Daubert court's comment that the balance between probative value and potential for prejudice is "designed not for the exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." 509 U.S. at 597, 113 S.Ct. at 2799. Mrs. Myers has not directed this *1109 Court to any authority that would indicate that the approach taken by Mr. Tranchina and Ms. Nix violated the methodology used by reasonable professionals in ascertaining the information required in the trial court's order appointing the Special Master.
At the hearing on Mrs. Myers' Motion to Traverse, the parties stipulated that if Mr. Tranchina were to testify, he would testify in accordance with his report, which was admitted into evidence. The court also received into evidence a copy of Mr. Myers' motion filed on December 13, 2001 seeking reduction of his child support obligation. Ms. Nix was accepted as an expert certified public accountant with no objection by the parties. She testified that she did not do a review or audit, but received the information given to her by Mr. Myers and based her report on that information. She testified that Mr. Myers' 2002 income was $82,541, a $15,859 decrease from the previous year's income reflected in a prior trial court judgment. Ms. Nix testified that she researched the final figures from documentation provided by Mr. Myers, including corporate and individual bank statements and disbursement spread sheets.
Mr. Myers, individually and as principal for his businesses, leases the Lake Vista property from Charles A. Kronlage. Mr. Myers lived in the house after his separation; however, during the marriage, the family lived on Dryades Street in uptown New Orleans and only the businesses occupied the Lake Vista property. When questioned about her allocation of 25% of the home expenses to the home office, Ms. Nix testified that she and Mr. Tranchina believed the 25% allocation, which resulted in a monthly rent allocation of $500, to be reasonable. She applied the same percentage to utility expenses, resulting in an annual utility plus rental expense attributable to the businesses of $7,297. Counsel for Mrs. Myers questioned a $1000 subcontracting expense check payable to Mr. Myers' sister. When questioned by Mr. Myers as to whether it would be reasonable to pay his sister $1000 for a year's work helping him to answer the phone, forwarding his calls and assisting with his trial materials and illustrations, Ms. Nix replied that this was reasonable. Ms. Nix also testified that she allocated the entire annual telephone expense of $5,142 to Mr. Myers' businesses, opining that this represented a reasonable telephone expense for Mr. Myers' businesses. She allocated half of his automobile expenses to the businesses, as a reasonable allocation. She also testified in response to questioning by the trial court that she found his living expenses and lifestyle to be consistent with an annual income of between $80,000 and $85,000. When questioned by Mrs. Myers' counsel concerning a sixty-seven hundred dollar deposit into Mr. Myers' personal account, Ms. Nix noted that the check came from Mr. Myers' own business, and did not represent additional income.
Mr. Tranchina testified that he and Ms. Nix examined the documentation and found no basis on which to conclude that there were hidden bank accounts or fraud. They also performed a reverse imputation, and concluded that Mr. Myers' lifestyle was consistent with the reported income.
The trial court asked counsel for Mrs. Myers whether he had any evidence of a "hidden" or undisclosed bank account or support for an allegation of fraud. Counsel asserted unspecified testimony by Mr. Myers in a November 29, 2000 trial and a Hancock Bank account in the name of Frederick W. Myers d/b/a Electronic Presentations System, showing three credits in July of 2000. Mr. Myers testified that while represented by her sister, Mrs. Myers alleged incorrectly that the Lake *1110 Vista property was the "family home" and seized the property, thus denying Mr. Myers access to his banking records, books and business equipment. He stated that this action essentially shut down his business and resulted in separate litigation.[5] During that time, he set up the Hancock account and made deposits in an attempt to keep his business going. Mr. Myers testified that the funds deposited in the Hancock Bank account eventually were transferred back into his Omni account and were fully disclosed and reported.
We find no basis for a conclusion that the trial judge abused her broad discretion in accepting the methodology used by Mr. Tranchina and Ms. Nix.
Mrs. Myers claims that it is suspicious that Mr. Myers knew in December of 2001, when he filed his Motion to Reduce, that his income would have declined materially the next year. However, it is clear that the extended divorce litigation damaged his business, a fact that was evident at the time Mr. Myers filed his motion. We find no abuse of discretion in the trial court's rejection of Mrs. Myers' suspicion in this respect.
Mrs. Myers contends that the trial court erred in finding a material change in circumstances because Mr. Myers produced no evidence other than that produced in connection with the Special Master's Report. Because we find no abuse of the trial court's broad discretion in accepting the facts set forth in the Report, this assignment of error is without merit.
Mrs. Myers argues that the Special Master did not fulfill his statutory obligation to exercise the power to regulate all proceedings before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties. La.R.S. 13:4165 B. Mrs. Myers produced no credible, competent evidence that Mr. Myers committed fraud in the present case or in connection with his prior divorce litigation. Mr. Tranchina testified that his review of the documents and his and Ms. Nix's review of the circumstances of Mr. Myers' life did not lead him to suspect any type of fraud, absent which he would not subpoena the records of Mr. Myers' clients. Apparently, the trial court agreed with this course of action and we find no abuse of her broad discretion in that conclusion.
Mrs. Myers claims that the Special Master and Forensic CPA violated her consent and engaged in inappropriate ex parte conversations with Mr. Myers and the trial judge. Mrs. Myers admits in brief that the experts did not violate a clearly set guideline, as was the case in the jurisprudence cited in support of her position. Mrs. Myers refers this Court to Mr. Tranchina's letter of March 11, 2003, responding to Mrs. Myers' counsel's letter of March 3, 2003. Counsel advised Mr. Tranchina that he did not consent to ex parte contact with Mr. Myers, to asking Mr. Myers for additional documentation, or to an extension of time within which to issue his report. Mr. Tranchina's reply advised that he would call Mr. Myers and remind him to send Mrs. Myers' counsel copies of all documentation supplied to Mr. Tranchina. He said that he had asked Mr. Myers for additional documentation needed by Mrs. Nix and which would be forwarded to counsel and to Mrs. Myers' accountant advocate. Mr. Tranchina noted that since his communications with Mr. Myers concerned requests for additional information needed by the court-appointed CPA, he assumed *1111 no one would object. He also noted the timing issue that had arisen because the generation of the report occurred during tax preparation season, and the CPA needed additional time to review the original and additional documentation supplied concerning Mr. Myers' income for the relevant time period. These documents were before the trial court, and we cannot say that she abused her broad discretion in concluding that these communications were not improper so as to vitiate the Special Master's Report. Moreover, there is no indication in the transcript of the hearing on Mrs. Myer's Motion to Traverse the Report of the Special Master that Mrs. Myers introduced evidence of impropriety or raised any issues of fundamental fairness or due process.
For the foregoing reasons, we affirm the judgment of the trial court accepting the Report of the Special Master and ordering Mr. Myers to pay monthly child support in the amount of $794 retroactive to January 2, 2002 and 81% of any extraordinary expenses. We assess the costs of this appeal to the appellant, Judith B. Myers.
AFFIRMED.
BELSOME, J., concurs in the result.
BELSOME, J., Concurs in the Result.
The undersigned reads La. R.S. 13:4165 to limit the Special Master's findings to those issues which the trial court orders him to examine. In the case at hand, the trial court's order states that the Special Master "determine the gross incomes of the parties and all other financial issues associated with Mr. Myers' rule to reduce his child support and Mrs. Myers' motion to make past due support executory." It is inappropriate for the Special Master to issue findings on exceptions ("the motion . . . does state a cause of action"), the trial court's previous determinations ("the Court was correct"), or pending motions ("the motion for new trial... should be denied.")
The Special Master statute was designed to assist a trial court in performing its duties in complicated litigation, not as a means to substitute the Special Master's opinion for that of the district court judge. While this Special Master report may be overly broad, the trial judge accepted and adopted it. Given the previous rulings by this court determining the scope of discovery, the undersigned is compelled to uphold the trial court. I respectfully concur in the result reached by the majority.
NOTES
[1] In his pro se brief, Mr. Myers suggests that a prior support judgment dated June 20, 2001 was not supported by the evidence. That judgment was not appealed and is now final and unappealable.
[2] The court issued further orders at that time that are not relevant to this appeal.
[3] Mr. Tranchina and Ms. Nix had reviewed Mr. Myers' prior years' income in connection with previous divorce litigation.
[4] The issue of spousal support was not addressed by the trial court's judgment and is not before the Court in this appeal.
[5] Myers v. Schultz, XXXX-XXXX, Civil District Court for the Parish of Orleans. Judgment was rendered on January 10, 2005 awarding Mr. Myers $375,000 in damages from Mrs. Myers' sister and former attorney.